**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 19-cv-03598-REB

MICHAEL CHRISTOPHER FELICETTI,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed December 19, 2019, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[2] I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges he is disabled as a result of a number of physical and mental impairments, the most relevant of which for purpose of this appeal are visual and cognitive impairments related to a traumatic brain injury. After his application for

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] Although the parties consented to have the matter referred to and determined by a United States magistrate judge (*see* [#12], filed February 21, 2020), I exercise my discretion under **D.C.COLO.LAPR** 72.2(d) to decline to enter an order of reference under 28 U.S.C. § 636(c).

disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. That hearing was held on August 20, 2018. At the time of this hearing, plaintiff was 53 years old. He has a two-year associates degree and past relevant work experience as a state trooper. He has not engaged in substantial gainful activity since at least December 1, 2015, his amended alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the evidence established plaintiff suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Plaintiff's visual discomfort, dry eye syndrome, and presbyopia were found to be non-severe. The ALJ found plaintiff had the residual functional capacity to perform a range of light work which among other limitations, required only simple, routine, repetitive tasks; no exposure to large crowds; and only occasional operation of a vehicle with no night driving. Although this conclusion precluded plaintiff's past relevant work, the ALJ found there were other jobs existing in sufficiently significant numbers in the national and local economies he could perform. She therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2.  The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.  The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy.  **Id.**  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  **Brown**, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  **Id.**

## III.  LEGAL ANALYSIS

In two related points of error, plaintiff claims the ALJ failed to give proper weight to the opinions of his treating sources and thus that her opinion is not supported by substantial evidence.  Finding no merit in these arguments, I affirm.

Plaintiff's arguments are premised in part on the notion that the ALJ failed to give proper weight to the opinions of two optometrists, Dr. Ronald Bateman and Dr. Jaclyn Munson, who treated plaintiff for visual complaints at different times.  Plaintiff saw Dr. Bateman in May 2012 for complaints of double vision related to a December 2011 vehicle accident.  (Tr. 257-262, 633-634.)  Following several months of vision therapy, plaintiff was cleared for and passed a driving evaluation.  (Tr. 639, 642.)  By early 2013, plaintiff had completed vision therapy and it was noted that his visual issues were resolved and he had resumed activities such as driving and reading.  (Tr. 410-411, 642-643.)

However, between plaintiff's alleged date of onset (December 1, 2015) and his date last insured (December 31, 2017), the record reflects plaintiff reported no complaints and received no medical treatment for visual impairments.[3]  Indeed, plaintiff did not claim any visual impairments at the time he filed for benefits in February 2017 (*see* Tr. 194), nor in subsequent reports outlining his claimed disabilities and limitations (*see* Tr. 218, 228).  It was not until July 2018, some six months after his date last insured, that plaintiff first saw Dr. Munson for a new glasses prescription, at which time he complained of dry, itchy eyes, glare, and poor night vision.  (Tr. 799-800.)

---

[3]  To the extent the record reflects plaintiff's eyes were assessed in connection with physical examinations for other complaints during this period, his eyes routinely were noted to be normal.  (Tr. 569-570, 595-596, 598, 706-707, 710, 713, 796-797.)

Ultimately, the ALJ concluded at step two of the sequential analysis that plaintiff's alleged visual impairments were non-severe, that is, that they constituted no more than a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." **Social Security Ruling** 85-28, 1985 WL 56856 at *3 (SSA 1985). Nevertheless, she accounted for plaintiff's visual complaints by including in his residual functional capacity limitations on driving requirements. (*See* Tr. 20.)

Plaintiff's suggestion that these determinations were in error suffers from a number of infirmities. First, even if it were error to have found these alleged impairments non-severe at step two of the sequential analysis, any such error would be harmless:

> At step 2, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. "Thus, step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" Because the conclusion that a claimant has at least one severe impairment requires the ALJ to proceed to the next step of the sequential evaluation, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."

*Perotin v. Colvin*, 110 F.Supp.3d 1048, 1053 (D. Colo. 2015) (quoting *Dray v. Astrue*, 353 Fed. Appx. 147, 149 (10th Cir. 2009)).[4] Because the ALJ here found plaintiff

---

[4] Moreover, the ALJ properly considered and actually accounted for plaintiff's visual complaints in formulating his residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(2) (ALJ must consider impact of non-severe impairment in combination with all other impairments, both severe and non-severe, in assessing residual functional capacity); *Grandusky v. Berryhill*, 2018 WL 2722465 at *3 (D. Colo. June 6, 2018) (same).

suffered from a number of other severe impairments and thus considered the remaining steps of the sequential analysis in evaluating his claim for benefits, the failure to find these alleged impairments to be severe presents no basis for reversal in itself.

Second, plaintiff's representations to the contrary notwithstanding, the record does not contain a medical opinion from either Dr. Bateman or Dr. Munson. Pursuant to the Commissioner's regulations, "[m]edical opinions are statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Drs. Bateman's and Munson's treatment records, standing alone, do not constitute medical opinions to which the ALJ would have been required to assign weight.[5] **See Grandusky v. Berryhill**, 2018 WL 2722465 at *3 (D. Colo. June 6, 2018); **Corral v. Berryhill**, 2018 WL 2335695 at *3 (D. Colo. May 23, 2018); **Baysinger v. Colvin**, 2016 WL 1170147 at *4 (D. Colo. Mar. 25, 2016).

Third, the record more than adequately substantiates the ALJ's conclusion that plaintiff did not suffer from severe visual impairments during the relevant time period. It is plaintiff's burden to prove he was disabled prior to his date last insured. **See** 20 C.F.R. § 404.131; **Deegan v. Colvin**, 2013 WL 1827747 at *3 (D. Colo. April 30, 2013) (citing **Ivy v. Sullivan**, 898 F.2d 1045, 1048 (5th Cir. 1990)). As recounted above, the evidence established that plaintiff successfully completed vision therapy in early 2013, more than two years prior to his alleged date of onset, and reported no substantial visual complaints prior to visiting Dr. Munson in July 2018, six months after his date last

---

[5] For this same reason, the ALJ did not err in failing to discuss the factors set forth at 20 C.F.R. § 404.1527(d).

insured. In the interim, plaintiff did not complain of any vision-related impairments or difficulties, and treatment notes described unremarkable eye examinations. Although evidence outside the relevant period may be considered if it relates to the insured period, *see White v. Berryhill*, 704 Fed. Appx 774, 779 (10th Cir. Oct. 4, 2017); *Galvez v. Berryhill*, 2019 WL 2121291 at *7 (D. Colo. May 15, 2019), nothing in the evidence supports a conclusion that such is the case here.

Plaintiff's further suggestion that the ALJ failed to properly consider or address his cognitive issues and fatigue related to his traumatic brain injury is simply belied by the record.[6] The majority of plaintiff's argument in this regard is based on his own report of his symptoms and limitations, which the ALJ found not entirely credible based on clearly articulated and legitimate reasons. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001); *Zagorianakos v. Colvin*, 81 F.Supp.3d 1036, 1045 (D. Colo. 2015). Nevertheless, plaintiff's testimony that he had trouble remaining on task and got overwhelmed and suffered occasional "meltdowns" when he could not complete a task was accommodated by the ALJ's incorporation in plaintiff's residual functional capacity assessment of limitations to simple, routine, repetitive tasks and jobs requiring little or no changes in job tasks. Likewise, the ALJ's limitation on plaintiff's interactions with

---

[6] Here again, the bare treatment records from Mountain Crest Behavioral Health do not constitute "medical opinions" to which the ALJ was required to assign weight. (*See* Tr. 690-695, 721-792.) Moreover, under the regulations applicable to plaintiff's claim for benefits, Nurse Practitioner Mary McAfee, on whose statements plaintiff relies, is not an "acceptable medical source" and therefore could not in any event render a medical opinion, *see* 20 C.F.R. § 404.1527(a)(2), or be considered a treating source, *see* 20 C.F.R. § 404.1513(d). *See also* Social Security Ruling 06-03p, 2006 WL 2329939 at *2 (SSA Aug. 9, 2006); *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir.2007); *Zagorianakos v. Colvin*, 81 F.Supp.3d 1036, 1043 (D. Colo. 2015). *Cf.* 82 Fed. Reg. 5884, 5845-46, 2017 WL 168819 (SSA Jan. 18, 2017) (under regulations applicable to claims filed after March 27, 2017, Advanced Practice Registered Nurses – including Certified Nurse Midwives, Nurse Practitioners, Certified Registered Nurse Anesthetists, and Clinical Nurse Specialists – may be considered acceptable medical sources).

supervisors, co-workers, and the general public and the restriction that any position not require exposure to large crowds appear to accommodate his representations that he becomes overwhelmed in such circumstances.  These limitations adequately account for the moderate limitations in the work-related aspects of mental functioning which the ALJ found supported by the record.  (*See* Tr. 19-20.)

Because substantial evidence supports the ALJ's residual functional capacity assessment, there was no infirmity in the hypothetical she propounded to the ALJ, which properly included all limitations supported by the evidence.  **Gay v. Sullivan**, 986 F.2d 1336, 1341 (10th Cir.1993); **Perotin v. Colvin**, 110 F.Supp.3d 1048, 1056 (D. Colo. 2015).  Accordingly, remand is not warranted.

## IV.  ORDERS

I thus find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated February 23, 2021, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge